IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-94

 No. 489A20

 Filed 27 August 2021

 IN THE MATTER OF: A.S.D.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 7

 August 2020 by Judge Wesley W. Barkley in District Court, Caldwell County. This

 matter was calendared for argument in the Supreme Court on 21 June 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Lucy R. McCarl for petitioner-appellee Caldwell County Department of Social
 Services.

 Matthew P. McGuire for appellee Guardian ad Litem.

 David A. Perez for respondent-appellant mother.

 MORGAN, Justice.

¶1 Respondent, the mother of the juvenile A.S.D. (Amanda),1 appeals from the

 trial court’s order terminating her parental rights. After careful review, we affirm.

 I. Factual Background and Procedural History

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

¶2 On 4 December 2018, the Caldwell County Department of Social Services

 (DSS) filed a petition alleging that Amanda, who was less than two weeks old, was a

 neglected and dependent juvenile. DSS stated that it was currently involved with

 Amanda’s half-brother, D.D., who was in DSS custody. DSS claimed that respondent-

 mother had an extensive history of mental illness, had been diagnosed with several

 mental health disorders, and had a history of “polysubstance abuse.” DSS

 additionally alleged that respondent-mother did not have safe, stable housing and

 that respondent-mother had reported to hospital staff that she had been ousted from

 the home that she shared with Amanda’s father and had nowhere to stay. DSS also

 claimed that respondent-mother had been involved in “multiple violent relationships”

 and had several criminal convictions. DSS stated that respondent-mother had placed

 Amanda in a kinship placement in the same home as D.D.

¶3 On 6 March 2019, the trial court adjudicated Amanda to be a neglected and

 dependent juvenile based upon respondent-mother’s stipulations to the allegations

 contained within the juvenile petition. In a separate dispositional order, the trial

 court ordered that custody of Amanda be placed with DSS and that DSS have the

 authority to arrange a placement for the juvenile. The trial court further ordered

 respondent-mother to enter into an Out-of-Home Safety Agreement as her case plan

 and allowed respondent-mother to engage in supervised visitation with Amanda for

 one hour each week.
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

¶4 The trial court entered a permanency planning order on 30 May 2019 in which

 it found that respondent-mother was not consistently attending mental health or

 substance abuse treatment and did not have stable housing. The trial court set the

 primary permanent plan as reunification with a secondary plan of adoption.

¶5 In a permanency planning review order entered on 3 October 2019, the trial

 court found as fact that respondent-mother had not attended mental health services

 since January 2019. The trial court additionally found that respondent-mother was

 not receiving substance abuse treatment and that respondent-mother refused to

 submit to hair follicle drug screens because she “believes that such may result in the

 use of Black Magic on her hair.” The trial court also found as fact that respondent-

 mother still did not have stable housing.

¶6 On 5 March 2020, the trial court filed a permanency planning review order in

 which the trial court found that DSS had made numerous attempts to administer

 drug screens to respondent-mother, but that such attempts were often unsuccessful—

 such as on 25 November 2019 and 7 February 2020 when respondent-mother refused

 to come to the door on both occasions. The trial court also found that respondent-

 mother was living in a mobile home with her boyfriend, and that respondent-mother

 was unemployed because her boyfriend did not want respondent-mother to work and

 was paying respondent-mother $100 per week to complete chores around the home

 rather than have her to seek employment. The trial court further found as fact that
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 respondent-mother had not visited with the juvenile since respondent-mother had

 refused a drug screen on 14 October 2019. The trial court changed the primary

 permanent plan for Amanda to adoption and the secondary plan to guardianship with

 an approved caretaker.

¶7 On 12 March 2020, DSS filed a motion in the cause to terminate respondent-

 mother’s parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (9), based on

 neglect, willful failure to make reasonable progress, and the fact that respondent-

 mother’s parental rights with respect to another child had been terminated

 involuntarily and respondent-mother lacked the ability or willingness to establish a

 safe home. N.C.G.S. § 7B-1111(a)(1), (2), (9) (2019). On 7 August 2020, the trial court

 entered an order in which it determined that grounds existed to terminate

 respondent-mother’s parental rights as alleged in the motion. The trial court further

 concluded that it was in Amanda’s best interests that respondent-mother’s parental

 rights to Amanda be terminated. Accordingly, the trial court terminated respondent-

 mother’s parental rights.2 Respondent-mother appeals.

 II. Analysis

 2 The trial court’s order also terminated the parental rights of Amanda’s father. He is

 not a party to the proceedings before this Court.
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

¶8 Respondent-mother argues that the trial court erred by concluding that

 grounds existed to terminate her parental rights. A termination of parental rights

 proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§

 7B-1109, -1110 (2019); In re Montgomery, 311 N.C. 101, 110 (1984). At the

 adjudicatory stage, the petitioner bears the burden of proving by “clear, cogent, and

 convincing evidence” the existence of one or more grounds for termination under

 subsection 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(e), (f). We review

 a trial court’s adjudication “to determine whether the findings are supported by clear,

 cogent and convincing evidence and the findings support the conclusions of law.” In

 re Montgomery, 311 N.C. at 111 (citing In re Moore, 306 N.C. 394, 404 (1982)).

¶9 “[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient

 to support a termination of parental rights.” In re E.H.P., 372 N.C. 388, 395 (2019).

 We begin our analysis with the consideration of whether grounds existed to terminate

 respondent-mother’s parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

¶ 10 Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental

 rights if “[t]he parent has willfully left the juvenile in foster care or placement outside

 the home for more than 12 months without showing to the satisfaction of the court

 that reasonable progress under the circumstances has been made in correcting those

 conditions which led to the removal of the juvenile.” N.C.G.S. § 7B-1111(a)(2). “[T]he

 willfulness of a parent’s failure to make reasonable progress toward correcting the
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 conditions that led to a child’s removal from the family home ‘is established when the

 [parent] had the ability to show reasonable progress, but was unwilling to make the

 effort.’ ” In re L.E.W., 375 N.C. 124, 136 (2020) (second alteration in original) (quoting

 In re Fletcher, 148 N.C. App. 228, 235 (2002)).

¶ 11 In support of its adjudication of grounds pursuant to N.C.G.S. § 7B-1111(a)(2)3,

 the trial court made the following findings of fact:

 14. . . .

 a. Respondent[-]mother has an extensive history of
 substance abuse for which she has received
 inadequate treatment. She received an updated
 Comprehensive Clinical Assessment (CCA) on
 January 27, 2020. She was recommended to
 complete 90 hours of Substance Abuse Intensive
 Outpatient Treatment (SAIOP). She has only
 attended a few classes.

 b. Respondent[-]mother has submit[ted] to urine
 drug screens as requested by the Movant on 5/1/19,
 5/15/19, and 6/19/19. She refused to submit to a hair
 follicle drug screen on 9/5/19 and again in January
 of 2020. She has on numerous other occasions not
 made herself available for drug screens. She has
 never had a consistent six (6) month period of
 negative drug screens.

 3 We note that Finding of Fact 14 and its subparts were in reference to the grounds to

 terminate respondent-mother’s parental rights for neglect pursuant to N.C.G.S. § 7B-
 1111(a)(1), but the findings also demonstrate respondent-mother’s failure to make reasonable
 progress in correcting the conditions which led to Amanda’s removal, which supports the trial
 court’s determination that grounds existed to terminate respondent-mother’s parental rights
 pursuant to N.C.G.S. § 7B-1111(a)(2).
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

c. Respondent[-]mother completed a psychological
evaluation with Dr. Jennifer Cappelletty. Dr.
Cappelletty diagnosed Respondent[-]mother with
Schizoaffective Disorder, Bipolar Type; Cannabis
Use Disorder; Stimulant Use Disorder –
Amphetamine Type; and Opioid Use Disorder. Dr.
Cappelletty made the following recommendations
for Respondent[-]mother: (a) participate in
psychotherapy; (b) participate in a psychiatric
evaluation and comply with all recommendations; (c)
participate in the Assertive Community Treatment
Team (ACTT) program; (d) refrain from use of non-
prescribed substances; and (e) participate in
Vocational Rehabilitation Services. Respondent[-
]mother has refused to take any prescription
medication to address her mental health issues. In
addition to the psychological evaluation by Dr.
Cappelletty, Respondent[-]mother has completed 4
or 5 other mental health assessments. She has not
addressed any of the issues identified by Dr.
Cappelletty. She has not completed any mental
health treatment. She did not participate in the
ACTT program. She did not participate in
Vocational Rehabilitation Services.

d. Respondent[-]mother has lived a transient
lifestyle during the course of her involvement with
the Movant up until the last few months. She has
moved at least six (6) times since the birth of the
juvenile. She currently lives with a boyfriend and is
totally dependent upon him. She is unemployed and
has had only sporadic employment during her
involvement with the Movant. She exhibited no
consistency from February 2019 to March 2020. The
brief period of stability during the last few months
does not outweigh the year of instability during
which her environment shifted on a monthly basis.
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 e. Respondent[-]mother has not visited with the
 juvenile since October 14, 2019, due to her refusal to
 submit to drug screens.

 f. Respondent[-]mother has a history of domestic
 violence for which she has received no treatment.

 ....

 16. Grounds exist to terminate the parental rights of
 Respondent[-]mother pursuant to N.C.G.S. § 7B-
 1111(a)(2). The juvenile has been willfully left in foster care
 or placement outside the home for more than 12 months
 without showing to the satisfaction of the Court that
 outside of consideration of poverty, reasonable progress
 under the circumstances has been made [in] correcting the
 conditions which led to the removal of the juvenile.
 Specifically, Respondent[-]mother has not completed any of
 the objectives of her case plan with [DSS] or complied with
 the prior orders of the court in order to reunify with the
 juvenile. She demonstrated no consistency for a period in
 excess of a year.

 “Findings of fact not challenged by respondent are deemed supported by competent

 evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019).

 Furthermore, this Court limits its review of findings of fact “to those challenged

 findings that are necessary to support the trial court’s determination that . . . parental

 rights should be terminated.” In re N.G., 374 N.C. 891, 900 (2020) (emphasis added).

¶ 12 Respondent-mother challenges several of the trial court’s findings of fact. First,

 respondent-mother disputes Finding of Fact 14(a), arguing that there was no

 evidence to show that substance abuse was a continuing issue at the time of the
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

termination of parental rights hearing.4 We are not persuaded by this argument. In

this finding, contrary to respondent-mother’s assertion, the trial court did not purport

to determine that respondent-mother was continuing to use drugs at the time of the

hearing; rather, the trial court found that respondent-mother had an extensive

history of substance abuse for which she received inadequate treatment. This finding

is supported by the evidence of record. We note that respondent-mother stipulated to

the allegations in the juvenile petition that she had “an extensive history of

polysubstance abuse [and] a long history of using methamphetamines,

benzodiazepines, opiates, and marijuana, as well as other substances.” Additionally,

a DSS social worker testified at the termination hearing that respondent-mother had

an extensive history of substance abuse and that respondent-mother did not complete

the required substance abuse treatment. The trial court also observed that

respondent-mother was referred to intensive outpatient treatment but attended only

a few classes. Respondent-mother does not challenge this finding of fact on appeal,

and therefore it is deemed to be binding on this Court. In re T.N.H., 372 N.C. at 407.

Furthermore, we recognize that Dr. Cappelletty stated in her psychological

evaluation of respondent-mother that, in her opinion, “the combination of

[respondent-mother’s] severe and chronic mental illness and her history of substance

 4 Respondent-mother makes additional arguments regarding Finding of Fact 14(a),

but we do not address them because they are not relevant to grounds for termination under
N.C.G.S. § 7B-1111(a)(2). In re N.G., 374 N.C. 891, 900 (2020).
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 abuse has combined in such a way as to have a significant impact on her capacity to

 maintain stability and effectively parent.” Also, on several occasions, respondent-

 mother refused drug screens and hair follicle tests. Thus, there is clear, cogent, and

 convincing evidence to support Finding of Fact 14(a).

¶ 13 Next, respondent-mother contends that the portion of Finding of Fact 14(b)

 that she had “on numerous other occasions not made herself available for drug

 screens” is not supported by the evidence. We disagree with this contention. The DSS

 social worker testified that respondent-mother refused to participate in drug screens

 on 1 May, 15 May, 19 June, and 14 October 2019. Additionally, respondent-mother

 refused to participate in hair follicle tests on 5 September 2019 and 6 January 2020.

 Consequently, we conclude that clear, cogent, and convincing evidence supports this

 finding of fact.

¶ 14 Respondent-mother further contends that Finding of Fact 14(d), which states

 that she exhibited “no consistency from February 2019 to March 2020,” is erroneous.

 As support for her stance, respondent-mother cites the testimony of the DSS social

 worker that respondent-mother had maintained stable housing since December 2019,

 and that her “home was appropriate, clean and had space for Amanda were she to be

 returned.” Respondent-mother does not challenge, however, the portions of the trial

 court’s Finding of Fact 14(d) that respondent-mother had lived a “transient lifestyle”

 during the course of the case and had moved at least six times since Amanda was
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

born, that respondent-mother was unemployed and only had sporadic employment

during the course of the case, and that respondent-mother lived with her boyfriend

and was “totally dependent” upon him. Furthermore, the evidence of record showed

that respondent-mother had moved multiple times during the course of the case, was

not employed at the time of the termination of parental rights hearing, and had not

been employed since losing her job in June 2019. Respondent-mother also

acknowledged at the termination hearing that she was completely dependent upon

her boyfriend. The trial court favorably noted that respondent-mother had exhibited

a “brief period of stability during the last few months,” but nonetheless still assessed

that this positive stint did not “outweigh the year of instability during which her

environment shifted on a monthly basis.” We conclude that the trial court’s finding

that respondent-mother did not exhibit consistency from February 2019 to March

2020 was a permissible inference available to the trial court based upon the evidence

and unchallenged findings of fact. See In re D.L.W., 368 N.C. 835, 843 (2016) (stating

that it is the trial court’s duty to consider all the evidence, pass upon the credibility

of the witnesses, and determine the reasonable inferences to be drawn therefrom);

see also Scott v. Scott, 157 N.C. App. 382, 388 (2003) (stating that when the trial court

sits as fact-finder, it is the sole judge of the credibility and weight to be given to the

evidence, and it is not the role of the appellate court to substitute its judgment for

that of the trial court).
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

¶ 15 Respondent-mother maintains that Finding of Fact 14(e) is erroneous because

 she visited with Amanda in March 2020. Respondent-mother claims that she was

 eligible to visit earlier but could not do so because Amanda was out of town. We agree

 with respondent-mother on this point. The DSS social worker testified that

 respondent-mother had not visited with Amanda since October 2019 because

 respondent-mother “had to pass two [drug] screens” before she would be permitted

 visitation. The social worker further went on to testify, however, that respondent-

 mother passed drug screens in January 2020 and was eligible to visit with the

 juvenile during that month but could not do so because Amanda went with her “foster

 family . . . on a trip to California.” The trial court’s Finding of Fact 14(e) does not

 properly reflect the evidence submitted at the termination of parental rights hearing,

 and hence we disregard this finding of fact. See In re S.M., 375 N.C. 673, 684 (2020).

¶ 16 We next consider respondent-mother’s representation that a segment of

 Finding of Fact 16 is erroneous in its establishment that she had not completed any

 objectives of her case plan or complied with the prior orders of the trial court in order

 to reunify with Amanda, and that respondent-mother had demonstrated no

 consistency for a period in excess of twelve months. We begin by recalling that we

 have already determined that there was sufficient evidence to support Finding of Fact

 14(d) that respondent-mother exhibited “no consistency from February 2019 to March
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 2020,” and likewise conclude that the same evidence supports the trial court’s similar

 finding regarding respondent-mother’s lack of consistency in Finding of Fact 16.

¶ 17 As for the balance of Finding of Fact 16, we conclude that there was clear,

 cogent, and convincing evidence to support the trial court’s finding. First, respondent-

 mother admitted at the termination of parental rights hearing that she did not do

 anything toward completing her case plan other than working, and that she was

 unemployed by the time of the termination hearing. Second, we have found that there

 was sufficient evidence to sustain the trial court’s findings of fact that respondent-

 mother did not always make herself available for drug screens, that she did not

 complete substance abuse treatment, and that she did not complete any mental

 health treatment. Furthermore, while the trial court acknowledged that at the time

 of the termination of parental rights hearing respondent-mother had a brief period of

 stability with regard to housing, nonetheless she had previously been transient, and

 the trial court thereupon determined that respondent-mother’s short period of

 stability did not outweigh her lengthy period of instability. Therefore, Finding of Fact

 16 is properly supported by the record.

¶ 18 Respondent-mother argues that the trial court erroneously concluded that

 grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate her parental

 rights. Although respondent-mother concedes that she was slow to address many

 components of her case plan, respondent-mother contends that she made reasonable
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 progress and rectified the issues which led to Amanda’s removal from respondent-

 mother’s care by the time of the termination of parental rights hearing. We are not

 persuaded by these representations of respondent-mother.

¶ 19 This Court has recognized that “parental compliance with a judicially adopted

 case plan is relevant in determining whether grounds for termination exist pursuant

 to N.C.G.S. § 7B-1111(a)(2).” In re B.O.A., 372 N.C. 372, 384 (2019). A trial court

 should refrain from finding that a parent has failed to make reasonable progress in

 correcting the conditions that led to the child’s removal “simply because of his or her

 ‘failure to fully satisfy all elements of the case plan goals.’ ” Id. at 385 (quoting In re

 J.S.L., 177 N.C. App. 151, 163 (2006)). However, “a trial court has ample authority to

 determine that a parent’s ‘extremely limited progress’ in correcting the conditions

 leading to removal adequately supports a determination that a parent’s parental

 rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-

 1111(a)(2).” Id.

¶ 20 Here, respondent-mother admits that Amanda has resided in foster care or

 placement outside of the home for more than twelve months. However, respondent-

 mother asserts that she made reasonable progress toward correcting the conditions

 which led to Amanda’s removal from her care. This contention is without merit.

 Respondent-mother’s case plan was directed at resolving her issues concerning

 substance abuse, mental health, and instability. The case plan also aimed at
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

addressing respondent-mother’s lack of stable, safe housing. The evidence in the

record, which yielded the trial court’s supported findings of fact, demonstrates that

respondent-mother largely failed to comply with her case plan. Significantly,

although it was recommended that respondent-mother complete ninety hours of

intensive outpatient substance abuse treatment, she only attended a few classes and

failed to complete the treatment. Respondent-mother also failed to complete mental

health treatment and refused to take any prescription medication to address her

mental health issues. In like manner, respondent-mother demonstrated continued

instability during most of the course of this case; she was consistently transient and

unable to maintain stable employment. Respondent-mother remained completely

dependent upon her boyfriend, even up to the time of the termination hearing.

Although respondent-mother cites progress made by her just prior to the termination

of parental rights hearing, it was within the trial court’s authority to decide that these

improvements were insufficient in light of the historical facts of the case. See In re

T.M.L., 2021-NCSC-55, ¶ 32 (concluding that while the respondent “made some last-

minute attempts to comply with the case plan by the time of the termination hearing

. . . [his] partial steps—undertaken after DSS had filed petitions to terminate his

parental rights and two years or more after the children’s removal from the home—

[were] insufficient to constitute reasonable progress under N.C.G.S. § 7B-

1111(a)(2)”); see also In re O.W.D.A., 375 N.C. 645, 654 (2020) (concluding that, with
 IN RE A.S.D.

 2021-NCSC-94

 Opinion of the Court

 respect to grounds to terminate parental rights under N.C.G.S. § 7B-1111(a)(1), that

 although the respondent may have made some recent, minimal progress, “the trial

 court was within its authority to weigh the evidence and determine that these

 eleventh-hour efforts did not outweigh the evidence of his persistent failures to make

 improvements . . . and to conclude that there was a probability of repetition of

 neglect.”). Consequently, we hold that the trial court did not err by concluding that

 grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-

 mother’s parental rights.

 III. Conclusion

¶ 21 The trial court’s conclusion that a ground for termination existed pursuant to

 N.C.G.S. § 7B-1111(a)(2) is sufficient in and of itself to support termination of

 respondent-mother’s parental rights. In re E.H.P., 372 N.C. at 395. As such, we do

 not need to address her arguments regarding N.C.G.S. § 7B-1111(a)(1) and (9).

 Respondent-mother does not challenge the trial court’s conclusion that termination

 of her parental rights was in Amanda’s best interests. See N.C.G.S. § 7B-1110(a).

 Accordingly, we affirm the trial court’s order terminating the parental rights of

 respondent-mother.

 AFFIRMED.